## No. 33,898

J. G. GLATT, *Appellant*, v. SARAH E. NEWLAND and ETHEL STARTZ-MAN, as Executors of the Estate of Samuel B. Newland, Deceased, *Appellees.*

(83 P. 2d 663)

Opinion filed November 5, 1938.

*Arthur Hurd, John M. Rugh,* both of Abilene, *Maurice P. O'Keefe, Karl W. Root,* both of Atchison, *James L. Galle* and *R. O. Mason,* both of McPherson, for the appellant.

*Matt Guilfoyle* and *Thornton D. Scott,* both of Abilene, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action originally commenced against defandants' testator to rescind a contract for the sale of securities and to recover the purchase price under the securities law of Oklahoma. After the death of the testator the action was revived against the executors of his estate. Judgment was for defendants, sustaining a demurrer to the evidence of plaintiff. Plaintiff appeals.

The action was brought pursuant to section 4912 of the statutes of Oklahoma for 1931. That section is as follows:

"Every sale made in violation of any of the provisions of this act shall be voidable at the election of the purchaser; and the person making such sale and every director, officer or agent of or for such seller, if such director, officer or agent shall have personally participated or aided in any way in making such sale, shall be jointly and severally liable to such purchaser in any

action at law in any court of competent jurisdiction upon tender of the securities sold or of the contract made for the full amount paid by such purchaser, with interest, together with all taxable court costs and reasonable attorney's fees; provided, that no purchaser otherwise entitled shall claim or have the benefit of this action who shall have refused or failed within thirty (30) days from the date thereof to accept an offer in writing of the seller to take back the security in question and to refund the full amount paid by such purchaser, together with interest on such amount for the period from the date of payment by such purchaser down to the date of repayment, such interest to be computed:

"(a) In case such securities consist of interest-bearing obligations at the same rate as provided in such obligations; and

"(b) In case such securities consist of other than interest-bearing obligations at the rate of six percentum per annum; less, in every case, the amount of any income from said securities that may have been received by such purchaser."

The petition alleged that Newland was the agent of the Banner Production Company, an express trust; that on or about May 29, 1934, plaintiff purchased from Newland and certain trustees of the trust, certain oil payment assignments which were described in the petition; that in consideration of these assignments plaintiff executed and delivered to the trust a deed to a farm comprising 230 acres, 45 shares of bank stock and also paid the trust $2,500 in money; that Newland received a remuneration for his services in helping the trust sell the securities; that Newland was the agent of the trust and was not registered as an agent with the securities commission, as required by law; that at the time of the sale the securities in question were not registered with the Securities Commission of Oklahoma, as required by law; that on or about March 15, 1937, plaintiff tendered to defendant Newland certain oil and gas payment assignments issued by the Banner Production Company. These assignments were described in the petition. The petition further alleged that the assignments were assigned to Newland, and the sum of $66.22 was also tendered by plaintiff; that at the time this tender was made, plaintiff demanded from defendant Newland a conveyance to him of the land that had been conveyed by him to the trust, or, in lieu of the land, an amount of money, equivalent in value, or $35,000, the 45 shares of bank stock or its equivalent in money and $2,500; that all these demands were refused by defendant Newland; that plaintiff was at all times since March 15, 1937, ready and able to keep the tender open; that plaintiff had made the same tender to the trustees of the Banner Production Company; that all the above refused the demands of plaintiff.

The prayer was for a judgment for an amount plaintiff claimed was the value of the property and cash paid by him to the trust.

The answer of defendants denied that Newland was the agent of the Banner Production Company and alleged that the securities law of Oklahoma did not require such contracts as were sold to plaintiff to be registered or qualified with the commission; that plaintiff retained his oil run contracts from May 29, 1934, until about July 11, 1934, and then with full knowledge of all the circumstances, elected to trade off all of these contracts to the Banner Production Company and received in return other consideration; that by this sale he ratified the sale of May 29, 1934; that later, on February 2, 1935, plaintiff made a third deal with the trust by which he exchanged all the contracts he had obtained on the second deal; that plaintiff at the time he made his tender to Newland of the oil contracts, dated May 29, 1934, was no longer the owner of them and had not been since July 11, 1934.

The reply to this answer was a general denial.

It will be seen it was necessary that plaintiff should prove, in order to come under the act, first, that the sale was made in violation of law. There seems to be no serious contention but that these contracts were securities, as defined by the act, and that they were not registered or qualified, as required by the act, hence the sale was in violation of the provisions of the act. Next, it is necessary, in order for this action to be good against Newland, that he should be proved to be the agent of the Banner Production Company. This was put in issue by the pleadings. Defendants argue here that the plaintiff failed to offer any substantial evidence to prove this, and that on this account the demurrer to the evidence was correctly sustained. After an examination of the record, however, we have reached the conclusion that there was sufficient evidence of agency introduced to make this a question of fact for the jury.

It then becomes necessary to notice the theory upon which this action to recover money is based. It is based upon the election of the purchaser, the plaintiff, to take advantage of the fact that the sale of the securities was made in violation of the law and hence voidable. It should be noted here that the only sale in which defendant Newland is claimed to have taken any part was the original sale to plaintiff on or about the 29th of May, 1934.

The statute then makes an agent in the voidable sale liable for the full amount of the purchase price, but provides that in order to

enforce this liability the purchaser must tender back the securities sold or the contract made. On this point there is no conflict in the evidence. On May 29, 1934, plaintiff did buy from the Banner Production Company the securities described in the petition. On July 11, 1934, he assigned these securities back to the Banner Production Company and received from that company some other securities of the same general nature. The record is devoid of evidence that Newland knew about or had anything to do with the latter transaction. The record also discloses that about February, 1935, plaintiff exchanged some of the securities he received in the transaction of July 11, 1934, for some other securities.

It should be noted here that this action is brought to recover pursuant to the terms of the statute. The petition does not charge nor does the evidence prove any fraud. The action is not one to recover on account of fraud. Counsel realize the necessity under the statute for proving a tender of the securities purchased by plaintiff. They meet this situation by proving that plaintiff bought some other oil-run contracts and tendered them back to defendant Newland. He argues here that it was not necessary in order for him to comply with the statute that he should tender back the identical securities, but that it is sufficient if he tenders back the equivalent of the securities purchased.

Defendant argues that the tender was insufficient because the record does not disclose that the contracts tendered back were the equivalent of the contracts bought. On this point the form of the contracts in question will be of interest. One of the contracts was as follows:

"OIL PAYMENT ASSIGNMENT

"WHEREAS, on the 14th day of December, 1933, a certain oil, gas and mining lease was made and entered into by and between Prentiss Price, Blanche Ratliff, R. R. Bell, Jacob Schwartz, sometimes called J. Schwartz, and Sam Schwartz, sometimes called S. Schwartz, lessors, and C. L. Carlock, lessee, covering the following-described land in the county of Oklahoma, and state of Oklahoma, to wit: Lot twelve (12), of Beverly Hills Suburban Ranches, second unit, a subdivision of the northeast quarter (NE¼) of section twenty-seven (27), township eleven (11) north, range three (3), West of the Indian Meridian, containing four (4) acres, more or less."

This lease being recorded in the office of the county clerk in and for said county in book 242, page 626, of the oil and gas records.

"WHEREAS, a portion of the said lease and of all rights thereunder or incident thereto, are now owned by the Banner Production Co., an express trust, of Oklahoma City, Oklahoma.

"Now, therefore, for and in consideration of one dollar (and other good and valuable considerations), the receipt of which is hereby acknowledged, the undersigned, the present owner of the said lease and rights thereunder or incident thereto, does hereby bargain, sell, transfer, assign and convey unto J. G. Glatt and Louise Glatt (as joint tenants with right of survivorship and not as tenants in common) 1/64th of lessee's interest of all oil and/or gas, as if and when produced, saved and sold from the above described lease until the said J. G. Glatt and Louise Glatt or assigns shall have received the sum of $15,000 in lawful money of the United States of America.

"It is further agreed and understood that after the $15,000 above mentioned has been paid in full, this assignment shall be null and void, and the owner and holder thereof shall forthwith release or re-assign the same to the said Banner Production, an express trust, or its successors or assigns.

"And for the same consideration, the undersigned, for itself, its successors and representatives, does covenant with said assignee, their heirs, successors or assigns, that it is the lawful owner of said lease and rights and interest thereunder and of the said personal property thereon or used in connection therewith; that the undersigned has good right and authority to sell and convey the same, and that said lease has been fully complied with.

"In witness whereof, the undersigned owner has signed and sealed this instrument this 29th day of May, 1934.

BANNER PRODUCTION CO.,
An express trust,
By: E. H. GARRETT,
T. B. RUCKER,
*Trustees."*

It will be noted that this entitles the holder to 1/64 of the lessee's interest in the oil and gas that should be taken from the lease described until $15,000 should be paid to the holder.

The record discloses that plaintiff bought the following contracts: 5/384 of Beverly Hills lease, 5/3,840th of a Beverly Hills lease, 1/640 of above lease, 1/640 of above lease, 1/640 of Carney Heights Addition lease, 1/640 of above, 5/384 of above, 5/384 of Earps Addition lease.

The record also discloses that the contracts tendered back were for different fractional interests, the leases were on different real estate, the parties to whom the lease was made in the first place were different and there were differences in the dates of the contracts and the assignments. It is true that each contract provided that the contract should be in effect only until the amount of money named in the contract should be paid the holder. The question of whether this payment should ever be made was not guaranteed by the Banner Production Company. It is altogether dependent on whether any oil or gas is taken from the lease. The value of the contracts at any certain time depended upon the location of the

lease, the state of development in the field, whether wells were being drilled on the lease, the price of crude oil and the length of time wells on the lease had been producing, if at all. There is no evidence in this record on any of these matters. Such being the case, we cannot say that plaintiff proved that the securities he tendered back were the equivalent of the securities purchased. We have examined the authorities relied on by plaintiff and find that they are not controlling on this point.

Another consideration in this case is that the action is one under the statute to rescind the contract of purchase. We have seen that about six weeks after the purchase the plaintiff did tender back the contracts he purchased and received some other contracts. The defendant Newland had nothing to do with this transaction. Defendant argues that by this exchange plaintiff rescinded the contract he is charged with having been a party to, and that this is the rescission contemplated by the statute. Plaintiff meets this argument by contending that the plaintiff did not know of the violation of the securities act by the Banner Production Company at the time of the transaction of July 11. It must be remembered that this is not an action based on fraud, but is based on the statutory right of the purchaser to elect to treat the contract as voidable. In that situation we see that the only contract of purchase with which the defendant Newland was concerned had been rescinded by a tender back of the contract and a receipt of other contracts. Such being the case, the contract of purchase in which Newland was charged with acting as agent had become a closed incident. It could no longer be made the basis of an action under the statute.

For the failure of proof as to the securities tendered back being the equivalent of the securities purchased, and on account of the proof that the contract of purchase for which defendant Newland is charged with being an agent had been rescinded before the tender back of the securities and the demand for repayment, we have concluded that the demurrer of the defendants to the evidence of plaintiff was properly sustained.

The judgment of the trial court is affirmed.